23CA1145 Peo v White 10-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1145
Jefferson County District Court No. 20CR2333
Honorable Lindsay Van Gilder, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Lamont White,

Defendant-Appellant.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Lipinsky and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

James West, Alternate Defense Counsel, Longmont, Colorado, for Defendant-
Appellant

¶ 1     Defendant, David Lamont White, appeals the district court's order designating him a sexually violent predator (SVP). We reverse and remand for factual findings.

## I.     Background

¶ 2     White pleaded guilty to one count of attempted sexual assault. At the providency hearing, the parties asked the court to proceed with sentencing although White had not yet undergone an assessment to determine whether he met the criteria to be designated an SVP.

¶ 3     An SVP is an offender who (1) is eighteen years of age or older on the date of the offense; (2) is convicted of a qualifying sex offense; (3) committed the offense against a stranger; and (4) is likely to recidivate based on the results of a sexually violent predator assessment screening instrument (SVPASI). § 18-3-414.5(1)(a)(I)-(IV), C.R.S. 2025.

¶ 4     The district court accepted White's plea and sentenced him to three years in prison. The court then outlined the four SVP criteria. It acknowledged that it could not make a finding under the fourth criterion — the recidivism risk criterion — without the results of an SVPASI, portions of which must be completed by a trained

evaluator, including the calculation of the sex offender risk scale (SORS) score.

¶ 5     Because White's SVPASI had not been completed, the court proposed that the probation department complete "the SVP evaluation" and that, once the court received the results, it would "enter a finding and amend the mittimus." After defense counsel confirmed that he was "fine" with this proposal, the court ordered the probation department to complete the SVPASI and added that, after receiving the results, it would set a hearing if needed. But the court didn't explain how it would determine if a hearing was needed or indicate whether the parties would have an opportunity to respond to the SVPASI.

¶ 6     Days later, the probation department filed the SVPASI, which determined that White met the criteria for an SVP designation. As to the fourth criterion, the assessment summary concluded that White was likely to recidivate based on his SORS score. But the SVPASI also had internal inconsistencies. For instance, one section of the SVPASI stated that White had previously been convicted of a sex crime, while another section said that White had no previous sex crime convictions. And some portions of the SVPASI were

2

incomplete, including the section asking the evaluator to affirm whether they "agree[d]" with the instrument's recidivism risk findings.[1]

¶ 7 About one hour after the probation department filed the SVPASI, the court entered a two-line order finding that White "meets criteria and qualifies" as an SVP and "the mittimus will reflect" the designation. White did not ask the court to reconsider the order or object to the SVPASI or the order.

## II. Reliability of the SVPASI

¶ 8 As we understand it, White now contends that he was denied due process because the SVPASI — specifically, the SORS formula to determine recidivism risk — does not reliably identify sex offenders at risk of reoffending.

¶ 9 Because White didn't object to the district court's stated intent at the sentencing hearing to use the SVPASI — along with the embedded SORS score — to determine whether he met the

---

[1] White was assessed using the 2020 version of the SVPASI. The SVPASI is updated periodically using the most current sex offender risk assessment research available to assist district courts in determining whether an offender is likely to recidivate. *See* § 16-11.7-103(4)(d), C.R.S. 2025.

recidivism risk criterion, we review for plain error. *See People v. Salas*, 2017 COA 63, ¶¶ 42-46. An error is plain if it is obvious, meaning that it contravenes a clear statutory command, a well-settled legal principle, or Colorado case law, *Scott v. People*, 2017 CO 16, ¶ 16, *abrogated on other grounds by*, *Whiteaker v. People*, 2024 CO 25, ¶ 25, and substantial, meaning that it "casts serious doubt on the reliability of the SVP designation," *Salas*, ¶ 57.

¶ 10      Under the SVPASI used to assess White, the recidivism risk criterion could be met in one of three ways: (1) prior sex crime conviction(s); (2) a SORS score of twenty-two points or higher; or (3) a qualifying score on one of three psychological inventories. The probation department calculated White's SORS score to be 49.87 points — well over the threshold.

¶ 11      White now challenges the predictive accuracy of his SORS score. He generally argues that the SORS formula is an unreliable and invalid measure that violated his right to due process because it does not distinguish sex crimes from other violent crimes, and it

measures recidivism risk based on prior *charges* rather than prior *convictions*.[2]

¶ 12     We need not address these specific arguments, however, because even if the SORS formula is an imperfect indicator of recidivism risk, any error in its accuracy would not have been obvious to the court.  After all, the SORS formula is evidence-based with multiple variables.  *See People v. Williamson,* 2021 COA 77, ¶¶ 17-18 (describing the nature and quality of the risk factors underpinning the SORS formula).  And, as White concedes, at least two divisions of this court have rejected similar challenges to the use of a SORS score for an SVP designation.  *See People v. Mendoza,* 313 P.3d 637, 641-44 (Colo. App. 2011); *People v. Brosh,* 251 P.3d 456, 459-60 (Colo. App. 2010).

¶ 13     While White is correct that the SORS formula has changed since *Mendoza* and *Brosh* were announced, he doesn't point to any authority rejecting the SORS formula that the court used to designate him an SVP.  And to the extent *Mendoza* and *Brosh* didn't

---

[2] The SORS score is based, in part, on the number of adult *cases* filed with misdemeanor or felony charges.  White's SVPASI lists twenty-five adult cases filed against White.  White does not challenge the accuracy of this number.

specifically address every argument White now raises, he doesn't explain how or why the court would otherwise have been alerted to any claimed insufficiencies in the SORS formula without the benefit of an objection. Nor does he explain how a qualifying SORS score as determined by the SVPASI — an instrument to which district courts must give substantial deference — is otherwise obviously unreliable. *See Allen v. People,* 2013 CO 44, ¶ 16 (instructing courts to "substantially defer" to the SVPASI recommendation).

¶ 14 We therefore cannot conclude that the court plainly erred by not sua sponte rejecting the SVPASI or finding the SORS formula unreliable. *See Williamson,* ¶ 25 (holding that the district court "does not violate due process principles" when it adopts the SVPASI recommendations); § 18-3-414.5(2) (noting that the SVP designation must be "[b]ased on" the SVPASI).

### III. The SVP Designation

¶ 15 White next contends that we should reverse his SVP designation because the district court failed to make the required factual findings to designate him an SVP.

¶ 16 The court's SVP designation presents a mixed question of law and fact. *Allen,* ¶ 4. We defer to the court's factual findings if they

6

are supported by the record.  *See id.*  And we review de novo whether those findings are sufficient to support an SVP designation. *People v. Tunis*, 2013 COA 161, ¶ 36.

¶ 17     An SVP designation carries significant consequences.  *See Mendoza*, 313 P.3d at 640 n.1.  Thus, it's important for a district court to identify and make specific factual findings concerning each of the four SVP criteria.  *See People v. Loyas*, 259 P.3d 505, 512 (Colo. App. 2010), *overruled in part on other grounds by*, *Page v. People*, 2017 CO 88.  Indeed, section 18-3-414.5(2) states that "the court shall make specific findings of fact and enter an order concerning whether the defendant is [an SVP]" based on the results of the SVPASI.  *See People v. Huckabay*, 2020 CO 42, ¶ 16 ("[T]here is a presumption that the word 'shall' when used in a statute is mandatory." (citation omitted)).

¶ 18     The written order here, however, states only that, "[b]ased on the attached" SVPASI, White "meets criteria and qualifies as [an SVP]."  The order contains no factual findings on any of the SVP

criteria.[3] And though the order is "based on" the SVPASI, the court still must "make findings concerning" the four SVP criteria. *Williamson*, ¶ 14.

¶ 19    We also acknowledge that White's SVPASI has inconsistencies and is incomplete. As White points out, his SVPASI includes inconsistent statements about prior qualifying sex offense convictions. And the evaluator left blank the section asking whether they agreed with the SORS finding. Given these irregularities, together with the lack of any specific findings on the SVP criteria, we agree with the People that "the proper remedy" is "a remand to the district court" for the specific findings required under section 18-3-414.5(2). *People v. Tuffo*, 209 P.3d 1226, 1231-32 (Colo. App. 2009) (reversing an SVP determination because of the lack of specific factual findings, among other reasons).

## IV.    Ineffective Assistance of Counsel

¶ 20    White also generally asserts that defense counsel provided ineffective assistance by failing to object to the inaccuracy of the

---

[3] Although the written order contained no findings on the SVP criteria, we recognize that the court generally observed at the providency hearing that the first three criteria were satisfied.

SVPASI as well as to his SVP designation. But because of the need for a developed factual record, ineffective assistance of counsel claims should ordinarily be raised in a postconviction motion — not a direct appeal. *People in Interest of Uwayezuk*, 2023 COA 69, ¶ 21.

¶ 21 Because White doesn't explain why his ineffective assistance claim should be treated differently, we do not address it. And to be clear, we express no opinion on the effectiveness of defense counsel.

## V. Disposition

¶ 22 We reverse the order designating White an SVP and remand the case to the district court with directions to make the specific factual findings required under section 18-3-414.5(2) to support an SVP designation, if appropriate. To the extent the court requires additional or clarifying information from the probation department or the parties, it may, in its discretion, request such information.

JUDGE LIPINSKY and JUDGE KUHN concur.